UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RELIQ HEALTH TECHNOLOGIES, INC. § <br> Plaintiff, § <br> § <br> v. § <br> §    CIVIL ACTION NO. _____ <br> § <br> SHELBY NEAL and ACCUHEALTH § <br> TECHNOLOGIES, LLC § <br> Defendants. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND
## APPLICATION FOR INJUNCTIVE RELIEF

COMES NOW Plaintiff Reliq Health Technologies, Inc. ("Plaintiff" or "Reliq") and files this Original Complaint and Application for Injunctive Relief against Defendants Shelby Neal ("Neal") and AccuHealth Technologies, LLC ("AccuHealth") (collectively "Defendants"). In support thereof, Reliq would show the Court the following:

### PARTIES

1. Plaintiff Reliq Health Technologies, Inc. is a publicly traded Canadian corporation with its principal place of business in Ontario, Canada.

2. Defendant Shelby Neal is a resident of Houston, Texas, and may be served with civil process at her place of residence located at 2303 Crawford, Houston, Texas 77004, or wherever else she may be found.

3. Defendant AccuHealth is a Texas limited liability company, incorporated in Texas and doing business in Texas. AccuHealth may be served with civil process by serving its registered agent, David Torres, at 200 S. 10th Street, Suite 1401, McAllen, Texas 78501, or wherever else he may be found.

## JURISDICTION & VENUE

4. This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1338(a) as Reliq is asserting trademark and copyright infringement claims against the Defendants; and pursuant to 28 U.S.C. § 1331 which provides that federal district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. This Court has supplemental jurisdiction over Plaintiff's remaining claims.

5. Additionally, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds $75,000.00 and the case is between citizens of Canada and citizens of Texas.

6. This Court has personal jurisdiction over Defendant Shelby Neal because she is a resident of Texas. This Court has personal jurisdiction over Defendant AccuHealth because it is a Texas company with its principal place of business in Texas.

7. Venue is proper in the Southern District, Houston Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Southern District of Texas, Houston Division.

## FACTUAL BACKGROUND

8. Reliq is a publicly traded healthcare technology company based in Canada. As part of Reliq's business operations, Reliq has a healthcare software platform referred to as "iUGO Care" or "iUGO."

9. Defendant Neal is a former Reliq employee. She worked in Houston, Texas, marketing, implementing, troubleshooting and assisting in the sales of Reliq's iUGO software. She was paid at the rate of $100,000.00 per year; received a signing bonus of $20,000.00; and was entitled to earn certain commissions.

10. Defendant Neal began work for Reliq in June, 2018. In the terms and conditions of her Employment Agreement dated May 21, 2018, Defendant Neal agreed not to solicit Reliq's customers and not to use Reliq's confidential and proprietary information after termination of her employment with Reliq. Further, Neal was obligated to give two (2) weeks' notice prior to resigning from employment with Reliq.

11. On or about July 18, 2018, Reliq signed a contract with AccuHealth, under the terms of which it agreed to license to AccuHealth Reliq's software platform (hereinafter the "Agreement"). The Agreement allowed AccuHealth to use Reliq's software in exchange for certain subscription payments based upon the number of patients AccuHealth signed up to use the software. The Agreement did <u>not</u> grant AccuHealth free rein to use the "iUGO" brand or its name. The Agreement also did not grant AccuHealth the right to misappropriate any of the software code on which the iUGO platform was based.

12. In order to assist AccuHealth in enrolling new patients, Reliq and AccuHealth signed a supplemental agreement, under the terms of which Reliq agreed to pay certain amounts towards the training and salaries of four (4) AccuHealth employees for up to one (1) year (hereinafter the "Supplemental Agreement"). The Supplemental Agreement was entered into for the purpose of facilitating Reliq's provision of services outlined in the Agreement.

13. The agreements between Reliq and AccuHealth were signed at a time when Defendants and others were clandestinely plotting to steal Reliq's clients; steal Reliq's employees and consultants; and usurp Reliq's business in the Texas healthcare technology market.

14. On December 4, 2018, Defendants' plan was revealed when Defendant Neal resigned from Reliq, and she and other AccuHealth employees admitted that they were going to compete directly with Reliq in the healthcare technology market in Texas.

15. Contrary to her contractual obligation, Defendant Neal did not give two (2) weeks' notice prior to terminating her employment with Reliq. The reason she did not give such notice was because giving the required notice would have undermined her efforts to steal Reliq's clients, consultants, and business. When Defendant Neal failed to give the required notice, she prevented the proper transition and training of the remaining Reliq staff. Defendant Neal had been the primary point of contact for Reliq's software users in Texas; when she abruptly walked out on her job, Reliq was unable to fill orders or generate billing reports for Reliq's software users for weeks thereafter. These actions by Shelby Neal were intentional, extremely disruptive and very damaging to Reliq's business.

16. Immediately after Defendant Neal resigned on December 4, 2018, Reliq became aware that Defendants had begun marketing a new software that they called "iUGO Version 3" -- despite the fact that Reliq had never authorized release of a version 3 of its software. AccuHealth sent invitations to its customers to access what AccuHealth called "iUGO Care v3." **But whatever "iUGO version 3" that AccuHealth was and is promoting, is not an authorized Reliq product. It is not an "iUGO" product.** Defendants knew that at the time and know that today. Moreover, based on information and belief, whatever Defendants are calling "iUGO Care v3" is not HIPAA compliant. Even if such software may be based, in part, on iUGO's software code, it does not have the characteristics of authorized iUGO software.

17. The "iUGO" name and brand are protected trademarks of Reliq. Reliq has continuously used the "iUGO" and "iUGO Care" name in connection with its software platform. The trademark is distinctive and does not describe any quality, characteristic, or ingredient of the software at issue.

18.     Defendants are not authorized by law or by contract to misappropriate iUGO's brand, marks or name for their own personal gain.  Reliq owns the "iUGO" and "iUGO Care" marks and brand names, and Defendants' unauthorized use of such marks/brands in connection with software that is not Reliq's software is likely to cause confusion in the minds of the potential customers and to the market as whole.

19.     On or after December 4, 2018, AccuHealth approached Reliq's clients (including but not limited to Paz; Criterion; and Renaissance Hospital), telling them that AccuHealth could provide "better, less expensive software" than Reliq, and asked Reliq's clients to switch to AccuHealth's software.  The software that AccuHealth was pedaling was not an authorized Reliq product – despite the fact that AccuHealth claimed to be promoting "iUGO Care v.3."

20.     AccuHealth also solicited one or more of Reliq's sales employees to sell AccuHealth's home health services while marketing Reliq's software.  AccuHealth promised one Reliq employee, in writing, a "kickback" if he sold AccuHealth services while he was working as a Reliq employee.

21.     Further, AccuHealth has in its possession, custody and control personal property belonging to Reliq.  The property includes at least the following: a conference table with six chairs; two black/red desk chairs; a flat screen TV; dry erase board; mini-fridge; HP printer; Reliq tradeshow booth; two white desks with side drawers; a Jabra conference speaker; and portable keyboard and mouse.  Request to return this property has been made to AccuHealth; the property has not yet been returned.  This property belongs to Reliq and must be returned to Reliq.  Failure to return Reliq's property constitutes conversion.

22.     Reliq is entitled to terminate the agreements that it signed with AccuHealth, as well as a refund of the monies it paid AccuHealth for the support of the four (4) AccuHealth employees

referenced in the Supplemental Agreement. At the time the agreements were signed, AccuHealth intended to steal Reliq's clients; steal Reliq's employees and consultants; steal Reliq's trade name and trademark; and usurp Reliq's business in the Texas healthcare technology market. AccuHealth's actions constitute a repudiation of the agreements with Reliq. Under the circumstances, it would be pointless for Reliq to continue to act under the agreements.

23. Defendants' actions are harming Reliq on a daily basis. Reliq is entitled to recover all damages to which it is legally entitled.

## CAUSES OF ACTION

### DEFENDANTS' TRADEMARK INFRINGEMENT AND/OR FALSE ADVERTISING AND/OR FALSE ASSOCIATION

24. Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

25. Defendants' unauthorized use of the "iUGO" mark falsely indicates to the public that the software or product Defendants are promoting as "iUGO v3" is approved by, sponsored by or licensed by Reliq's iUGO software platform. Defendants' unauthorized use of the "iIUGO" mark is likely to cause confusion, to cause mistake, or to deceive customers by suggesting some affiliation between Reliq's iUGO software platform and AccuHealth's alleged iUGO v3 software platform. Defendants' actions constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a).

26. Section 39 of the Lanham Act provides federal court jurisdiction over "all actions arising under this Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." In the case at bar, federal question jurisdiction is based on the Lanham Act as a whole, and on its operative sections.

27. The Lanham Act bars the use of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that is likely to cause confusion, mistake or deceit as to the affiliation, connection or association of Reliq's software products, or as to the origin, sponsorship, or approval of goods, services, or commercial activities. The Lanham Act also bars such activity that misrepresents the nature, characteristics, qualities, or geographic origin of another person's goods, services, or commercial activities. Defendants have engaged in such prohibited conduct.

### DEFENDANTS' UNFAIR TRADE PRACTICES AND UNFAIR COMPETITION

28. Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

29. Defendants have engaged in unfair trade practices and unfair competition prohibited by Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). Defendants have used the "iUGO" and/or "iUGO Care" names in commerce in prohibited ways as set forth in the preceding paragraphs. Such actions are likely to cause confusion, mistake or deceit as to the affiliation, connection or association of Reliq's software products, or as to the origin, sponsorship, or approval of goods, services, or commercial activities. Such actions also misrepresent the nature, characteristics, qualities, or geographic origin of another person's goods, services, or commercial activities.

30. Defendants' publishing, selling, and marketing of Reliq's copyrighted and trademarked material constitutes unfair trade practices and unfair competition against Reliq. This conduct has caused Reliq irreparable injury.

## DEFENDANTS' COPYRIGHT INFRINGEMENT

31. Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

32. "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

33. Reliq owns a valid copyright in the software code that is the basis of its iUGO software platform. Reliq's software code is copyrightable subject matter under the laws of the United States. Based on information and belief, Defendants have infringed on such copyright by copying such code without authorization, and have unlawfully used the copied code, at least in part, to create new software that AccuHealth is now marketing under "iUGO version 3." Defendants' copyright infringement was willful, malicious, and intentional.

34. Based on information and belief, Defendants have misappropriated Reliq's software code and based their "iUGO version 3" at least in part on such code. Defendants' actions constitute violations of the copyright law of the United States.

## DEFENDANT NEAL'S BREACHES OF CONTRACT

35. Defendant Neal agreed that she would not use Reliq's confidential information outside of her employment with Reliq. Defendant Neal promised, in writing, that she would not solicit clients, nor compete with Reliq for a set time period following her employment with Reliq.

36. Defendant Neal breached these provisions of the Employment Contract by abruptly resigning from Reliq, without the contractually mandated notice, and then marketing and selling Reliq's property and confidential information to further her employment with AccuHealth. Reliq has been harmed by such breach and Defendant Neal must be held fully accountable.

37. In connection with the non-compete agreement executed by Defendant Neal, Reliq requests that the Court reform such agreement to include the location and market to which Defendant Neal worked for Reliq. The non-compete agreement prohibits Defendant Neal from being employed and owning shares in a competitor company in North America for a period of one (1) year. Notwithstanding the language of the non-compete that Defendant Neal signed, Reliq does not seek to enforce the non-compete as to all of North America. Reliq seeks to enforce the non-compete agreement only as to a reasonable geographic limitation. Reliq expressly requests that the Court reform the non-compete agreement to include a reasonable geographic limitation in accordance with Reliq's legitimate business interests. Reliq expressly requests that the Court enforce such agreement, as reformed.

### DEFENDANT NEAL'S BREACHES OF FIDUCIARY DUTY

38. Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

39. Defendant Neal was an employee of Reliq and during that time owed fiduciary duties to Reliq. Defendant Neal breached those fiduciary duties by conspiring with AccuHealth to steal Reliq's confidential information, and market such information to Reliq customers through AccuHealth. Such breaches have caused substantial damage to Reliq.

### DEFENDANT ACCUHEALTH'S BREACHES OF CONTRACT

40. Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

41. Reliq and Defendant AccuHealth executed the Agreement, which provided that AccuHealth would not deal with, use, exploit, disclose, or reproduce Reliq's confidential information, which expressly includes "data or information including, specifications, documents,

correspondence, research, software, trade secrets, discoveries, ideas, knowhow, designs, drawings, product information, technical information and all information concerning the operations, affairs and business of [Reliq]."

42. AccuHealth materially breached the Agreement by misappropriating and using the software as described in this Complaint. Reliq has been harmed by such breach and Defendant AccuHealth should be held fully accountable.

43. AccuHealth's material breach of the Agreement; conduct that constitutes repudiation of the Agreement; and fraudulent conduct justifies rescission of the Agreement and the Supplemental Agreement.

## CONVERSION

44. Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

45. Pleading in the alternative, Reliq asserts a claim against Defendants for conversion. Reliq legally owned and possessed personal property that Defendants have wrongfully retained. Reliq suffered monetary damages due to Defendants' conversion.

46. Reliq lost its use and control of its personal property when Defendants unlawfully retained such property. Defendants converted Reliq's property and are liable to Reliq for conversion.

## DECLARATORY JUDGMENT

47. Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

48. A real and substantial disagreement exists between Reliq and AccuHealth as to the rights and obligations under the Agreement and Second Agreement. At the time the agreements

were signed, AccuHealth intended to steal Reliq's clients; steal Reliq's employees and consultants; steal Reliq's trade name and trademark; and usurp Reliq's business in the Texas healthcare technology market. AccuHealth's actions constitute a repudiation of the agreements with Reliq and/or a material breach so fundamental that the entire basis of any contract between the parties has been vitiated. AccuHealth's scheme to use the Agreement and Second Agreement to defraud Reliq and its scheme to steal Reliq's confidential information and software users justifies termination of the contracts. Reliq seeks a declaration that the Agreement and Second Agreement were procured by fraud, are void and unenforceable; and/or have terminated.

49. In the alternative, Reliq has the right to terminate the Agreement and Supplemental Agreement at will. Reliq hereby gives notice that any contracts with AccuHealth have terminated.

## DAMAGES

50. The precise extent of damages Reliq has sustained as a result of Defendants' wrongful actions have not yet been quantified. However, Reliq is seeking all actual, direct, indirect, consequential, special, exemplary, and all other damages to which it may be entitled.

## ATTORNEYS' FEES

51. As a further result of the actionable conduct by Defendants, Reliq has been compelled to engage the services of McGinnis Lochridge LLP and has agreed to pay that firm for services rendered and to be rendered in the prosecution and trial of this lawsuit and in any appeal to the Fifth Circuit Court of Appeals and Supreme Court. Reliq is entitled to recover its attorneys' fees incurred in the prosecution and appeal of this case.

## CONDITIONS PRECEDENT

52. All conditions precedent to Reliq's claims have been performed or have occurred. In the alternative, compliance with such conditions has been excused or waived.

Defendants are estopped from requesting compliance with any conditions precedent

### APPLICATION FOR PRELIMINARY INJUNCTION

53. Plaintiff incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

54. Reliq hereby seeks prohibitory injunctive relief.

55. The purpose of injunctive relief is to preserve the status quo of the subject matter of the litigation and prevent irreparable harm until after a final determination of the merits. *See University of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Injunctive relief is necessary so that Defendants cannot continue to confuse the marketplace and harm Reliq's goodwill by peddling an unauthorized product using Reliq's intellectual property.

56. In order to establish the need for injunctive relief, a plaintiff must address the following factors: (1) irreparable injury, (2) no adequate remedy at law, (3) a likelihood of success on the merits, (4) the balance of hardships, and (5) the effect on public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008),

57. To satisfy the irreparable injury requirement, the plaintiff must show that it will likely suffer imminent injury and that the injury would be irreparable. FED. R. CIV. P. 65(b)(1)(A). An irreparable injury must be actual and imminent, and is one that cannot by prevented or fully rectified upon final judgment. *See Id.*; *see also Grand River Enterprises Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). Further, an injury is irreparable if it is not adequately measureable, if the plaintiff cannot be adequately compensated, or if the defendant would be insolvent. *See e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976).

58. To show no adequate remedy at law, a plaintiff may show that legal remedy is illusory. *See e.g., Wilson v. Illinois S. Ry.*, 263 U.S. 574, 576-77 (1924). Further, depending on

the relief sought, whether there is an adequate remedy at law can be merged with a showing of irreparable injury. *See Kinney v. International Union of Operating Engineers*, 994 F.2d 1271, 1275 n.5 (7th Cir. 1993).

59. To support an application for preliminary injunction, the plaintiff should plead that there is a substantial likelihood of success on the merits, but does not need to prove it will ultimately prevail. *See Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016).

60. Currently, Defendants are marketing a product called "iUGOVersion 3" which has not been authorized by Reliq, despite the fact that Reliq owns the "iUGO" mark. Defendants continue to use Reliq's trademarks unlawfully. Such infringement is causing confusion in the marketplace as Defendants are peddling a product name they do not have the right to use. The confusion is exacerbated by the fact that Reliq is close to implementing its own version 3 of its iUGO software, which is fundamentally different than the "version 3" Defendants are unlawfully marketing.

61. To the extent Defendants' "new" software, which they are unlawfully calling "iUGO version 3," is based, in part, on code from Reliq's iUGO software, such use must immediately cease. Reliq owns the code underlying its software and Defendants are not entitled to misappropriate such code.

62. Defendants' actions are causing irreparable injury to Reliq. Reliq's goodwill may be irreparably damaged by (1) dissatisfaction with the quality of Defendants' now unlicensed services over which Reliq does not control; (2) association of Reliq's trademarks with unlicensed usage; and (3) use of Reliq's copyrighted material for Defendants' own gain. Such an injury, damage to business and goodwill, and unfair competition, is not adequately measurable and it is

unlikely that damages could compensate Plaintiff for this loss. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.").

63. Reliq requests injunctive relief or it will have no adequate remedy at law as Defendants will be able to continue to damage Reliq's business with no recourse. Without relief, Defendants will continue to sell a product it does not own with a mark it does not own, based on software code it does not own, all of which have the potential to harm Reliq's goodwill in an amount that cannot be readily be determined. Further, there is no adequate remedy at law because calculating and establishing damages for the harm to Reliq's goodwill and business will be exceedingly difficult.

64. Reliq pleads and has established that there is a substantial likelihood of success on the merits. Defendants do not own the "iUGO" name or mark, but have marketed and used such name attempting to sell "iUGO Version 3." The "iUGO Version 3" that Defendants are marketing is not a Reliq product; even if it is based, in part, on code misappropriated from Reliq, it is not Reliq's authorized and approved software code.

65. Reliq further pleads that injunctive relief would not adversely affect public policy or public interest. Reliq is unaware of any third-parties that would be adversely affected by injunctive relief. Defendants have no contractual or other legal right to continue to use Reliq's trademarks or copyrighted software code, so Defendants' rights will not be harmed by the Court's granting of the relief sought. Public policy and public interest will be further served by preventing Defendants' efforts to misappropriate and steal Reliq's intellectual property.

66. Due to Defendants' actions, and for the reasons stated herein, Reliq requests that the Court enter a Preliminary Injunction and Permanent Injunction, and order as follows:

      (a) Defendants immediately cease using Reliq's brand name "iUGO" or "iUGO Care" and/or other Reliq trademarks on any website, promotional material, or any medium in which information is conveyed; and

      (b) Defendants immediately cease marketing, promoting, selling or using in any way software that bears the "iUGO" name or any other name or mark owned by Reliq; and

      (c) Defendants immediately cease using in any way any software code that is based, in whole or in part, on software owned by Reliq; Defendants must stop marketing, selling or using any software that is based, even in part, on Reliq's code; stop using Reliq's code to develop new or different software; and stop using Reliq's code for any purpose.

Defendants' unlawful conduct is clearly actionable and Plaintiff's Application for Preliminary Injunction should be granted. Plaintiff hereby requests a hearing on its Application for Preliminary Injunction. Plaintiff hereby requests a permanent injunction. Plaintiff is willing to post a bond in an amount set by the Court.

## PRAYER

WHEREFORE, Plaintiff Reliq Health Technologies, Inc. asks for judgment against Defendant for the following:

    a.    actual damages;

    b.    pre-judgment and post-judgment interest;

    c.    reasonable and necessary attorneys' fees incurred in the prosecution and appeal of this case;

    d.    all costs of suit;

    e.    that the Court declare the Agreement void, and or order rescission of the Contract;

    f.    that the Court declare the Agreement terminated;

    g.    that the Court grant Plaintiff's Application for Preliminary Injunction and order as follows:

        1. Defendants immediately cease using Reliq's brand name "iUGO" or "iUGO Care" and/or other Reliq trademarks on any website, promotional material, or any medium in which information is conveyed; and

        2. Defendants immediately cease marketing, promoting, selling or using in

    any way software that bears the "iUGO" name or any other name or mark owned by Reliq; and

  3. Defendants immediately cease using in any way any software code that is based, in whole or in part, on software owned by Reliq; Defendants must stop marketing, selling or using any software that is based, even in part, on Reliq's code; stop using Reliq's code to develop new or different software; and stop using Reliq's code for any purpose.

h. any other relief at law or equity to which Plaintiff is justly entitled to receive.

    Respectfully submitted,

    */s/ Paul D. Clote*
    PAUL D. CLOTE
    Federal Bar No. 7437
    Texas Bar No. 04407300
    MARCUS V. EASON
    Federal Bar No. 2609087
    Texas Bar No. 24092374
    MCGINNIS LOCHRIDGE LLP
    711 Louisiana, Suite 1600
    Houston, Texas 77002
    pclote@mcginnislaw.com
    meason@mcginnislaw.com

    ATTORNEYS FOR PLAINTIFF
    RELIQ HEALTH TECHNOLOGIES, INC.