UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RELIQ HEALTH TECHNOLOGIES, INC. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:19-cv-00040 |
| SHELBY NEAL and ACCUHEALTH | § | |
| TECHNOLOGIES, LLC | § | |
| Defendants. | § | |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT AND
APPLICATION FOR INJUNCTIVE RELIEF**

COMES NOW Plaintiff Reliq Health Technologies, Inc. ("Plaintiff" or "Reliq") and files this First Amended Original Complaint and Application for Injunctive Relief against Defendants Shelby Neal ("Neal"), AccuHealth Technologies, LLC ("AccuHealth"), Stephen Samson ("Samson"), and Boby Deveros ("Deveros") (collectively "Defendants"). In support thereof, Reliq would show the Court the following:

**PARTIES**

1.     Plaintiff Reliq Health Technologies, Inc. is a publicly traded Canadian corporation with its principal place of business in Ontario, Canada.

2.     Defendant Shelby Neal is a resident of Houston, Texas. Defendant Neal has not yet appeared in this matter, but through counsel has agreed to waive formal service of summons.

3.     Defendant AccuHealth is a Texas limited liability company, incorporated in Texas and doing business in Texas. Defendant AccuHealth has not yet appeared in this matter, but through counsel has agreed to waive formal service of summons.

4.     Defendant Stephen Samson is a resident of Tierra Verde, Florida. Stephen Samson is a Canadian citizen, but may be served with process at his place of residence at 202 – 544 Pinellas

Bayway South, Tierra Verde, Florida  33715.

5.     Defendant Boby Deveros is resident of Ontario, Canada.  Boby Deveros is a Canadian citizen who may be served with process at his place of residence, 2310-290 Adelaide St. W., Toronto, ON, Canada, M5V 0P3.

## JURISDICTION & VENUE

6.     This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1338(a), as Reliq is asserting trademark and copyright infringement claims against the Defendants; and pursuant to 28 U.S.C. § 1331 which provides that federal district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

7.     This Court also has subject matter jurisdiction because a number of Plaintiff's claims arise under the Stored Communications Act and the Computer Fraud and Abuse Act.  *See* 18 U.S.C. § 2707(a); *see also* 18 U.S.C. § 1030(a).  This Court has supplemental jurisdiction over Plaintiff's remaining claims.

8.     This Court has personal jurisdiction over Defendant Shelby Neal because she is a resident of Texas.

9.     This Court has personal jurisdiction over Defendant AccuHealth because it is a Texas company with its principal place of business in Texas.

10.     This Court has personal jurisdiction over Defendant Stephen Samson because Samson has purposefully availed himself of the benefits and protections of the laws of the State of Texas; he has established "minimum contacts" with Texas; he has committed torts in whole or in part in the State of Texas.  This Court has personal jurisdiction over Defendant Samson because he committed acts in Texas that are substantially related to this lawsuit.

11.    This Court has personal jurisdiction over Defendant Boby Deveros because Deveros has purposefully availed himself of the benefits and protections of the laws of the State of Texas; he has established "minimum contacts" with Texas; he has committed torts in whole or in part in the State of Texas.  This Court has personal jurisdiction over Defendant Deveros because he committed acts in Texas that are substantially related to this lawsuit.

12.    Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Southern District of Texas, Houston Division.  Most of Reliq's revenue is derived from Houston clients and customers.  During relevant events in this lawsuit, Defendant Neal lived in Houston and conducted meetings with Reliq clients and customers in the Houston area.  Defendants conducted meetings among themselves in Houston as part of their secret plan to steal Reliq's business and clients and commit other illegal acts.

## FACTUAL BACKGROUND

13.    Reliq is a publicly traded healthcare technology company based in Canada.  As part of Reliq's business operations, Reliq has a healthcare software platform referred to as "iUGO Care" or "iUGO."

14.    Defendant Neal is a former Reliq employee.  She worked in Houston, Texas, marketing, implementing, troubleshooting and assisting in the sales of Reliq's iUGO software. She was paid at the rate of $100,000.00 per year; received a signing bonus of $20,000.00; and was entitled to earn certain commissions.

15.    Defendant Neal began work for Reliq in June, 2018.   In the terms and conditions of her Employment Agreement dated May 21, 2018, Defendant Neal agreed not to solicit Reliq's customers and not to use Reliq's confidential and proprietary information after termination of her

employment with Reliq.  Further, Neal was obligated to give two (2) weeks' notice prior to resigning from employment with Reliq.

16.     Defendant Deveros is a former contractor who worked for Reliq.  He worked in Canada and in Texas for Reliq; Deveros had responsibility over Reliq's "Iugo Care" platform.  He began working for Reliq in May 2018.

17.     On or about July 18, 2018, Reliq signed a contract with AccuHealth, under the terms of which it agreed to license to AccuHealth Reliq's software platform (hereinafter the "Agreement").  The Agreement allowed AccuHealth to use Reliq's software in exchange for certain subscription payments based upon the number of patients AccuHealth signed up to use the software.  The Agreement did <u>not</u> grant AccuHealth free rein to use the "iUGO" brand or its name. The Agreement also did not grant AccuHealth the right to misappropriate any of the software code on which the iUGO platform was based.

18.     In July 2018, AccuHealth was managed by Defendant Stephen Samson, who at that time also was the Chief Information Officer of Reliq.  Samson represented to Reliq that through AccuHealth, he could promote Reliq's business in the Texas market.

19.     In order to assist AccuHealth in enrolling new patients, Reliq and AccuHealth signed a supplemental agreement, under the terms of which, Reliq agreed to pay certain amounts towards the training and salaries of four (4) AccuHealth employees for up to one (1) year (hereinafter the "Supplemental Agreement").  The Supplemental Agreement was entered into for the purpose of facilitating Reliq's rendition of services outlined in the Agreement.

20.     The agreements between Reliq and AccuHealth were signed at a time when Defendants and others were clandestinely plotting to steal Reliq's clients; steal Reliq's employees and consultants; and usurp Reliq's business in the Texas healthcare technology market.  Perhaps

most disturbingly, Defendant Samson was the leader behind this plot; he devised and implemented the scheme *while* he was an officer of Reliq.

21.     Instead of working to further Reliq's interests, Defendant Samson chose to: violate his fiduciary duties; surreptitiously monitor and read emails of Reliq's CEO and other Reliq employees; attempt to steal clients from Reliq; use Reliq's iUGO brand and name for a product that was not a Reliq product; and otherwise engage in self-dealing at the expense of Reliq.

22.     While a Reliq employee, Samson deliberately misrepresented his intentions with respect to Reliq's account customers.  Samson claimed that, as AccuHealth, he would attempt to enroll patients that would benefit Reliq; according to Samson, AccuHealth patients using Reliq's software would be a win/win for Reliq and AccuHealth.  Samson specifically agreed that AccuHealth would not solicit or attempt to divert business from Reliq's accounts with Paz Home Health, including Criterion and Rio Grande Valley Health Alliance ACO.  Notwithstanding his promises, Samson and AccuHealth approached these Reliq clients (both before and after Samson's resignation from Reliq), in direct violation of his commitments and his fiduciary duties.

23.     On December 4, 2018, Defendants' plan was revealed when Defendants Samson, Neal, and Deveros resigned from Reliq.  At the time of their resignations, Defendants Samson, Neal, Deveros, and other AccuHealth employees admitted that they were going to compete directly with Reliq in the healthcare technology market in Texas, and attempt to take Reliq's existing customers.

24.     Contrary to her contractual obligation, Defendant Neal did not give two (2) weeks' notice prior to terminating her employment with Reliq.  The reason she did not give such notice was because giving the required notice would have undermined her efforts to steal Reliq's clients, consultants, and business.  When Defendant Neal failed to give the required notice, she prevented

the proper transition and training of the remaining Reliq staff.  Defendant Neal had been the primary point of contact for Reliq's software users in Texas; when she abruptly walked out on her job, Reliq was unable to fill orders or generate billing reports for Reliq's software users for weeks thereafter. These actions by Shelby Neal were intentional, extremely disruptive and very damaging to Reliq's business.

25.     Immediately after Defendants Samson, Neal, and Deveros resigned on December 4, 2018, Reliq became aware that Defendants had begun marketing a new software that they called "iUGO Version 3" -- despite the fact that Reliq had never authorized release of a version 3 of its software.  AccuHealth sent invitations to its customers to access what AccuHealth called "iUGO Care v3."  **But whatever "iUGO version 3" that AccuHealth was and is promoting, is not an authorized Reliq product.  It is not an "iUGO" product.**  Defendants knew that at the time and know that today.  Moreover, based on information and belief, whatever Defendants are calling "iUGO Care v3" is not HIPAA compliant.  Even if such software may be based, in part, on iUGO's software code, it does not have the characteristics of authorized iUGO software.

26.     The "iUGO" name and brand are protected trademarks of Reliq.   Reliq has continuously used the "iUGO" and "iUGO Care" name in connection with its software platform. The trademark is distinctive and does not describe any quality, characteristic, or ingredient of the software at issue.

27.     Defendants are not authorized by law or by contract to misappropriate iUGO's brand, marks or name for their own personal gain.  Reliq owns the "iUGO" and "iUGO Care" marks and brand names, and Defendants' unauthorized use of such marks/brands in connection with software that is not Reliq's software is likely to cause confusion in the minds of the potential customers and to the market as whole.

28.     Before and after December 4, 2018, AccuHealth and Deveros approached Reliq's clients (including but not limited to Paz; Criterion; and Renaissance Hospital), telling them that AccuHealth could provide "better, less expensive software" than Reliq; they asked Reliq's clients to switch to AccuHealth's software.   The software that AccuHealth was pedaling was not an authorized Reliq product – despite the fact that AccuHealth claimed to be promoting "iUGO Care v.3."

29.     AccuHealth also solicited one or more of Reliq's sales employees to sell AccuHealth's home health services while marketing Reliq's software.   AccuHealth promised one Reliq employee, in writing, a "kickback" if he sold AccuHealth services while he was working as a Reliq employee.

30.     Most of Reliq's revenue is derived from business in the Houston, Texas area. Defendants' illegal acts were directed towards Reliq clients, customers and patients, including those in the Houston metropolitan area.   Reliq's largest customer, Criterion Home Health Care, has most of its patients in the Houston area.   Reliq employees, Defendants Samson and Deveros, illegally solicited Criterion, seeking to divert Criterion's business from Reliq to AccuHealth. While working for Reliq, Defendant Samson, either individually or with Defendant Shelby, had business development discussions and meetings with MD Anderson Cancer Center in Houston. Reliq's sales employees have had meetings with prospective clients in the greater Houston area.

31.     Between May 2018 and December 4, 2018, Defendant Deveros was a contractor working for Reliq.   He was never a Reliq employee.   As a contractor, Deveros was responsible for providing services relating to Reliq's iUGO software platform.   Despite the duties he owed to Reliq, Deveros engaged in multiple fraudulent activities.   In this lawsuit, Reliq complains of the theft of medical devices by Deveros, acting individually and/or on behalf of AccuHealth.

32.     Historically, Reliq stored its ForaCare medical devices at Nexlink, a third-party logistics company in Minnesota.  Without authority or approval by Reliq, Deveros directed that the Minnesota logistics company send 5,000 of Reliq's ForaCare devices to McAllen, Texas, to be stored by CTC Distributing, a third-party company in South Texas.  Deveros was not authorized to direct the devices to be sent to Texas; in fact, he was expressly told <u>not</u> to set up this second fulfillment center in Texas.  Reliq only inadvertently discovered, after-the-fact, that Deveros had opened an account with CTC in Reliq's name, and had caused 5,000 of the ForaCare devices to be shipped to Texas.

33.     The ForaCare medical devices, owned by Reliq, collect critical vital sign data from high risk patients in their homes, and transmit the data to Reliq's software platform.  Each device must be tailored for a specific patient, so that only designated health care providers are allowed to access the device, with resulting data uploaded properly to Reliq's software platform.

34.     Reliq never signed, and never authorized any contract with CTC Distributing to be signed.  Deveros, acting as a rogue agent, opened an account with CTC, pretended that he had authority to open this fulfillment location for Reliq, and then had thousands of Reliq's medical devices shipped to and stored by CTC.

35.     On December 18, 2018 – after he was no longer affiliated with Reliq in any way - Defendant Deveros masqueraded as a Reliq employee and stole 30 ForaCare medical devices from Reliq.   The medical devices were and are owned by Reliq.  Only authorized Reliq employees could direct the logistics company to release the devices. Deveros lied to CTC, the logistics company, and told them that he was an employee of Reliq, even though he had resigned as a contractor weeks earlier.  Deveros then proceeded to remove (steal) 30 of the medical devices.

36.     After Defendant Samson terminated his employment and Defendants' plan, scheme and design was exposed, Reliq demanded that Samson return the laptop computer in his possession that belonged to Reliq.  Upon inspection of the computer, Reliq confirmed that Samson had wiped his Reliq computer clean, deleting all files, despite express instructions from Reliq to the contrary.

37.     Forensic investigation has confirmed that Defendant Samson illegally accessed, searched and read the emails of Reliq's CEO, Dr. Lisa Crossley, and other Reliq employees.  On repeated occasions, Defendant Samson illegally accessed Reliq's stored emails and conducted key word searches, for the purpose of spying on Reliq's CEO and other employees.  Defendant Samson took these actions on repeated occasions while he was a Reliq employee working in Texas.  Samson conducted these illegal email and computer searches while he was planning to steal Reliq's products, business, and customers.  Samson read and searched the emails of Reliq's CEO and other Reliq employees, secretly spying on them.

38.     Defendant Samson's conduct is repugnant, but even more so given his then position with Reliq as Chief Information Officer.  The scope of Defendant Samson's activities are still being investigated.  Plaintiff reserves the right to seek leave of Court to amend this Complaint to assert new facts and new causes of action against Defendant Samson as the investigation proceeds.

39.     AccuHealth has in its possession, custody and control personal property belonging to Reliq other than the ForaCare medical devices.  The property includes at least the following: a conference table with six chairs; two black/red desk chairs; a flat screen TV; dry erase board; mini-fridge; HP printer; Reliq tradeshow booth; two white desks with side drawers; a Jabra conference speaker; and portable keyboard and mouse.  Request to return this property has been made to AccuHealth; the property has not yet been returned.  This property belongs to Reliq and must be returned to Reliq.  Failure to return Reliq's property constitutes conversion.

40.     Reliq is entitled to terminate the agreements that it signed with AccuHealth, as well as a refund of the monies it paid AccuHealth for the support of the four (4) AccuHealth employees referenced in the Supplemental Agreement.  At the time the agreements were signed, AccuHealth intended to steal Reliq's clients; steal Reliq's employees and consultants; steal Reliq's trade name and trademark; and usurp Reliq's business in the Texas healthcare technology market. AccuHealth's actions constitute a repudiation of the agreements with Reliq.   Under the circumstances, it would be pointless for Reliq to continue to act under the agreements.

41.     Defendants' actions are harming Reliq on a daily basis.  Reliq is entitled to recover all damages to which it is legally entitled.

## CAUSES OF ACTION

### DEFENDANTS' TRADEMARK INFRINGEMENT AND/OR FALSE ADVERTISING AND/OR FALSE ASSOCIATION

42.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

43.     Defendants' unauthorized use of the "iUGO" mark falsely indicates to the public that the software or product Defendants are promoting as "iUGO v3" is approved by, sponsored by or licensed by Reliq's iUGO software platform.  Defendants' unauthorized use of the "iIUGO" mark is likely to cause confusion, to cause mistake, or to deceive customers by suggesting some affiliation between Reliq's iUGO software platform and AccuHealth's alleged iUGO v3 software platform.  Defendants' actions constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a).

44.     Section 39 of the Lanham Act provides federal court jurisdiction over "all actions arising under this Act, without regard to the amount in controversy or to diversity or lack of

diversity of the citizenship of the parties."  In the case at bar, federal question jurisdiction is based on the Lanham Act as a whole, and on its operative sections.

45.      The Lanham Act bars the use of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that is likely to cause confusion, mistake or deceit as to the affiliation, connection or association of Reliq's software products, or as to the origin, sponsorship, or approval of goods, services, or commercial activities.  The Lanham Act also bars such activity that misrepresents the nature, characteristics, qualities, or geographic origin of another person's goods, services, or commercial activities.  Defendants have engaged in such prohibited conduct.

### DEFENDANTS' UNFAIR TRADE PRACTICES AND UNFAIR COMPETITION

46.      Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

47.      Defendants have engaged in unfair trade practices and unfair competition prohibited by Section 43(a) of the Lanham Act.  15 U.S.C. § 1125(a).  Defendants have used the "iUGO" and/or "iUGO Care" names in commerce in prohibited ways as set forth in the preceding paragraphs.  Such actions are likely to cause confusion, mistake or deceit as to the affiliation, connection or association of Reliq's software products, or as to the origin, sponsorship, or approval of goods, services, or commercial activities.   Such actions also misrepresent the nature, characteristics, qualities, or geographic origin of another person's goods, services, or commercial activities.

48.      Defendants' publishing, selling, and marketing of Reliq's copyrighted and trademarked material constitutes unfair trade practices and unfair competition against Reliq.  This

conduct has caused Reliq irreparable injury.

## DEFENDANTS' COPYRIGHT INFRINGEMENT

49.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

50.     "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

51.     Reliq owns a valid copyright in the software code that is the basis of its iUGO software platform.  Reliq's software code is copyrightable subject matter under the laws of the United States.  Based on information and belief, Defendants have infringed on such copyright by copying such code without authorization, and have unlawfully used the copied code, at least in part, to create new software that AccuHealth is now marketing under "iUGO version 3." Defendants' copyright infringement was willful, malicious, and intentional.

52.     Based on information and belief, Defendants have misappropriated Reliq's software code and based their "iUGO version 3" at least in part on such code.  Defendants' actions constitute violations of the copyright law of the United States.

## DEFENDANT NEAL'S BREACHES OF CONTRACT

53.     Defendant Neal agreed that she would not use Reliq's confidential information outside of her employment with Reliq.  Defendant Neal promised, in writing, that she would not solicit clients, nor compete with Reliq for a set time period following her employment with Reliq.

54.     Defendant Neal breached these provisions of the Employment Contract by abruptly resigning from Reliq, without the contractually mandated notice, and then marketing and selling

Reliq's property and confidential information to further her employment with AccuHealth. Reliq has been harmed by such breach and Defendant Neal must be held fully accountable.

55.     In connection with the non-compete agreement executed by Defendant Neal, Reliq requests that the Court reform such agreement to include the location and market to which Defendant Neal worked for Reliq. The non-compete agreement prohibits Defendant Neal from being employed and owning shares in a competitor company in North America for a period of one (1) year. Notwithstanding the language of the non-compete that Defendant Neal signed, Reliq does not seek to enforce the non-compete as to all of North America. Reliq seeks to enforce the non-compete agreement only as to a reasonable geographic limitation. Reliq expressly requests that the Court reform the non-compete agreement to include a reasonable geographic limitation in accordance with Reliq's legitimate business interests. Reliq expressly requests that the Court enforce such agreement, as reformed.

## DEFENDANT NEAL'S BREACHES OF FIDUCIARY DUTY

56.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

57.     Defendant Neal was an employee of Reliq and during that time owed fiduciary duties to Reliq. Defendant Neal breached those fiduciary duties by conspiring with AccuHealth to steal Reliq's confidential information, and market such information to Reliq customers through AccuHealth. Such breaches have caused substantial damage to Reliq.

## DEFENDANT ACCUHEALTH'S BREACHES OF CONTRACT

58.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

59.     Reliq and Defendant AccuHealth executed the Agreement, which provided that AccuHealth would not deal with, use, exploit, disclose, or reproduce Reliq's confidential information, which expressly includes "data or information including, specifications, documents, correspondence, research, software, trade secrets, discoveries, ideas, knowhow, designs, drawings, product information, technical information and all information concerning the operations, affairs and business of [Reliq]."

60.     AccuHealth materially breached the Agreement by misappropriating and using the software as described in this Complaint.  Reliq has been harmed by such breach and Defendant AccuHealth should be held fully accountable.

61.     AccuHealth's material breach of the Agreement; conduct that constitutes repudiation of the Agreement; and fraudulent conduct justifies rescission of the Agreement and the Supplemental Agreement.

## DEFENDANT DEVEROS' THEFT OF RELIQ PROPERTY

62.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

63.     Reliq had a possessory right to the 30 medical devices.  Defendant Deveros unlawfully appropriated the property by taking it without Reliq's effective consent.  Defendant Deveros appropriated the property with the intent to deprive Reliq of the property.  As a result of Defendant Deveros' theft, Reliq suffered damages.

64.     Reliq's theft claims against Defendant Deveros arise under the Texas Theft Liability Act.  TEX. CIV. PRAC. & REM. CODE § 134.001 *et seq*.  Pursuant to the Theft Liability Act, "[a] person who commits theft is liable for the damages resulting from the theft."  *Id.* § 134.003(a).  "Theft" under the Theft Liability Act includes the unlawful appropriation of property

as outlined in the Texas Penal Code.  *See Id.* § 134.002(2); TEX. PEN. CODE § 31.03.  When the value of property stolen is more than $2,500 but less than $30,000, the offense is a state jail felony. TEX. PEN. CODE § 31.03(e)(4)(A).

### DEFENDANT SAMSON'S VIOLATIONS OF THE STORED COMMUNICATIONS ACT

65.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

66.     Defendant Samson violated the Stored Communications Act by accessing the Reliq server that stores Reliq's emails, without authority.  Defendant Samson accessed Reliq's email server and secretly view Dr. Lisa Crossley's emails, and the emails of other employees.  *See* 18 U.S.C. § 2701(a).  Defendant Samson "gained unauthorized access to a facility through which electronic services are provided…and must thereby have accessed electronic communications while in storage."  *Speer v. Saenz*, 2015 U.S. Dist. LEXIS 186663, at *16-17 (S.D. Tex. 2015) (citing *Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 791 (5th Cir. 2012)).  Reliq has been harmed by Defendant Samson's unlawful conduct.

67.     Such conduct is actionable under the Stored Communications Act pursuant to 18 U.S.C. § 2707(a).  Reliq seeks all damages and sanctions authorize by law as a result of Samson's violations of the Stored Communications Act.

### DEFENDANT SAMSON'S VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT

68.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

69.     Defendant Samson violated the Computer Fraud and Abuse Act by secretly accessing and monitoring Dr. Lisa Crossley's Reliq email account, and the accounts of numerous other Reliq employees.  Defendant Samson violated such act by (a) intentionally accessing a

computer, (b) without authorization, and thereby (c) obtaining information, (d) from a protected computer involved in interstate commerce, and (d) which caused damage to Reliq in an amount exceeding $5,000.00 dollars in a one-year period. *See* 18 U.S.C. § 1030(a)(2); *see also Absolute Energy Solutions, LLC v. Trosclair*, 2014 U.S. Dist. LEXIS 12772, at *7-8 (S.D. Tex. 2014).

70.     Similarly, Defendant Samson violated the Computer Fraud and Abuse Act by (a) accessing a protected computer, (b) without authorization, (c) knowingly and with intent to defraud, and thereby (d) furthering an intended fraud, and (e) causing Reliq to incur $5,000.00 in damage in a one-year period. *See* 18 U.S.C. § 1030(a)(4); *see also Absolute Energy Solutions*, 2014 U.S. Dist. LEXIS 12772, at *7-8.

71.     Reliq seeks all damages and sanctions authorized by law as a result of Samson's violations of the Computer Fraud and Abuse Act.

### DEFENDANT SAMSON'S VIOLATIONS OF THE TEXAS HARMFUL ACCESS BY COMPUTER ACT

72.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

73.     Defendant Samson violated the Texas Harmful Access by Computer Act by secretly accessing and monitoring Dr. Lisa Crossley's Reliq email account, and the email accounts of other Reliq employees.  The Texas Harmful Access by Computer Act creates a cause of action for those who have been injured by a defendant's knowing and intentional violation of Chapter 33 of the Texas Penal Code.  TEX. CIV. PRAC. & REM. CODE § 143.001.  Defendant Samson violated Chapter 33 of the Texas Penal Code by secretly retrieving and accessing, without authorization, Dr. Lisa Crossley's Reliq emails.  *See* TEX. PEN. CODE § 33.02(a).

74.     Reliq seeks all damages and sanctions authorized by law as a result of Samson's violations of the Texas Harmful Access by Computer Act.

## CONVERSION

75.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

76.     Reliq asserts a claim against Defendant Deveros for conversion.  Reliq owned and possessed personal property (ForaCare medical devices) that Deveros stole.  Reliq suffered monetary damages due to Defendant Deveros' conversion.

77.     Reliq asserts a claim against AccuHealth for conversion.  Reliq owned and possessed personal property that AccuHealth has wrongfully retained.  Reliq suffered monetary damages due to Defendant's conversion.

78.     Reliq lost its use and control of its personal property when Defendants unlawfully retained such property.  Defendants converted Reliq's property and are liable to Reliq for conversion.

## CONSPIRACY

79.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

80.     Defendants were each a member of a combination the object of which was to engage in (a) trademark infringement and/or false advertising and/or false association; (b) unfair trade practices and unfair competition; (c) copyright infringement; (d) Defendant Neal's breach of fiduciary duty; (e) Defendant Deveros' theft of Reliq's property; (f) Defendant Samson's violations of the Stored Communications Act; (g) Defendant Samson's violations of the Computer Fraud & Abuse Act; (h) Defendant Samson's violations of the Texas Harmful Access by Computer Act; and (i) Defendants' conversion.  The members of the conspiracy had a meeting of the minds on the object or course of action.

81.     Defendants are jointly and severally liable to Reliq for all acts done by any of them in furtherance of their conspiracy.  Reliq suffered injury as a proximate result of the wrongful acts and seeks recovery of their actual damages from Defendants.

## DECLARATORY JUDGMENT

82.     Reliq incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

83.     A real and substantial disagreement exists between Reliq and AccuHealth as to the rights and obligations under the Agreement and Second Agreement.  At the time the agreements were signed, AccuHealth intended to steal Reliq's clients; steal Reliq's employees and consultants; steal Reliq's trade name and trademark; and usurp Reliq's business in the Texas healthcare technology market.  AccuHealth's actions constitute a repudiation of the agreements with Reliq and/or a material breach so fundamental that the entire basis of any contract between the parties has been vitiated.  AccuHealth's scheme to use the Agreement and Second Agreement to defraud Reliq and its scheme to steal Reliq's confidential information and software users justifies termination of the contracts.  Reliq seeks a declaration that the Agreement and Second Agreement were procured by fraud, are void and unenforceable; and/or have terminated.

84.     In the alternative, Reliq has the right to terminate the Agreement and Supplemental Agreement at will.  Reliq hereby gives notice that any contracts with AccuHealth have terminated.

## DAMAGES

85.     The precise extent of damages Reliq has sustained as a result of Defendants' wrongful actions have not yet been quantified.  However, Reliq is seeking all actual, direct, indirect, consequential, special, exemplary, and all other damages to which it may be entitled.

86.     Reliq will show by clear and convincing evidence that the damages sustained by

Reliq resulted from the malicious and/or fraudulent conduct of Defendants.  As a result of Defendants' conduct, Reliq seeks an award of all exemplary damages to which it may show itself justly entitled.

### ATTORNEYS' FEES

87.     As a further result of the actionable conduct by Defendants, Reliq has been compelled to engage the services of McGinnis Lochridge LLP and has agreed to pay that firm for services rendered and to be rendered in the prosecution and trial of this lawsuit and in any appeal to the Fifth Circuit Court of Appeals and Supreme Court.  Reliq is entitled to recover its attorneys' fees incurred in the prosecution and appeal of this case.

### CONDITIONS PRECEDENT

88.     All conditions precedent to Reliq's claims have been performed or have occurred.  In the alternative, compliance with such conditions has been excused or waived.  Defendants are estopped from requesting compliance with any conditions precedent

### APPLICATION FOR PRELIMINARY INJUNCTION

89.     Plaintiff incorporates by reference the allegations made in all foregoing and subsequent paragraphs of this Complaint.

90.     Reliq hereby seeks prohibitory injunctive relief.

91.     The purpose of injunctive relief is to preserve the status quo of the subject matter of the litigation and prevent irreparable harm until after a final determination of the merits.  *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  Injunctive relief is necessary so that Defendants cannot continue to confuse the marketplace and harm Reliq's goodwill by peddling an unauthorized product using Reliq's intellectual property.

92.     In order to establish the need for injunctive relief, a plaintiff must address the

following factors: (1) irreparable injury, (2) no adequate remedy at law, (3) a likelihood of success on the merits, (4) the balance of hardships, and (5) the effect on public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

93.      To satisfy the irreparable injury requirement, the plaintiff must show that it will likely suffer imminent injury and that the injury would be irreparable.  FED. R. CIV. P. 65(b)(1)(A). An irreparable injury must be actual and imminent, and is one that cannot by prevented or fully rectified upon final judgment.  *See Id.*; *see also Grand River Enterprises Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).  Further, an injury is irreparable if it is not adequately measureable, if the plaintiff cannot be adequately compensated, or if the defendant would be insolvent.  *See e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976).

94.      To show no adequate remedy at law, a plaintiff may show that legal remedy is illusory.  *See e.g., Wilson v. Illinois S. Ry.*, 263 U.S. 574, 576-77 (1924).  Further, depending on the relief sought, whether there is an adequate remedy at law can be merged with a showing of irreparable injury.  *See Kinney v. International Union of Operating Engineers*, 994 F.2d 1271, 1275 n.5 (7th Cir. 1993).

95.      To support an application for preliminary injunction, the plaintiff should plead that there is a substantial likelihood of success on the merits, but does not need to prove it will ultimately prevail.  *See Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016).

96.      Currently, Defendants are marketing a product called "iUGOVersion 3" which has not been authorized by Reliq, despite the fact that Reliq owns the "iUGO" mark.  Defendants continue to use Reliq's trademarks unlawfully.  Such infringement is causing confusion in the marketplace as Defendants are peddling a product name they do not have the right to use.  The

confusion is exacerbated by the fact that Reliq is close to implementing its own version 3 of its iUGO software, which is fundamentally different than the "version 3" Defendants are unlawfully marketing.

97.     To the extent Defendants' "new" software, which they are unlawfully calling "iUGO version 3," is based, in part, on code from Reliq's iUGO software, such use must immediately cease. Reliq owns the code underlying its software and Defendants are not entitled to misappropriate such code.

98.     Defendants' actions are causing irreparable injury to Reliq.  Reliq's goodwill may be irreparably damaged by (1) dissatisfaction with the quality of Defendants' now unlicensed services over which Reliq does not control; (2) association of Reliq's trademarks with unlicensed usage; and (3) use of Reliq's copyrighted material for Defendants' own gain.  Such an injury, damage to business and goodwill, and unfair competition, is not adequately measurable and it is unlikely that damages could compensate Plaintiff for this loss.  *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.").

99.     Reliq requests injunctive relief or it will have no adequate remedy at law as Defendants will be able to continue to damage Reliq's business with no recourse. Without relief, Defendants will continue to sell a product it does not own with a mark it does not own, based on software code it does not own, all of which have the potential to harm Reliq's goodwill in an amount that cannot be readily be determined.  Further, there is no adequate remedy at law because calculating and establishing damages for the harm to Reliq's goodwill and business will be exceedingly difficult.

100.     Reliq pleads and has established that there is a substantial likelihood of success on

the merits.  Defendants do not own the "iUGO" name or mark, but have marketed and used such name attempting to sell "iUGO Version 3."  The "iUGO Version 3" that Defendants are marketing is not a Reliq product; even if it is based, in part, on code misappropriated from Reliq, it is not Reliq's authorized and approved software code.

101.     Reliq further pleads that injunctive relief would not adversely affect public policy or public interest.  Reliq is unaware of any third-parties that would be adversely affected by injunctive relief.  Defendants have no contractual or other legal right to continue to use Reliq's trademarks or copyrighted software code; Defendants' rights will not be harmed by the Court's granting of the relief sought.  Public policy and public interest will be further served by preventing Defendants' efforts to misappropriate and steal Reliq's intellectual property.

102.     Due to Defendants' actions, and for the reasons stated herein, Reliq requests that the Court enter a Preliminary Injunction and Permanent Injunction, and order as follows:

(a)  Defendants immediately cease using Reliq's brand name "iUGO" or "iUGO Care" and/or other Reliq trademarks on any website, promotional material, or any medium in which information is conveyed; and

(b)  Defendants immediately cease marketing, promoting, selling or using in any way software that bears the "iUGO" name or any other name or mark owned by Reliq; and

(c)  Defendants immediately cease using in any way any software code that is based, in whole or in part, on software owned by Reliq; Defendants must stop marketing, selling or using any software that is based, even in part, on Reliq's code; stop using Reliq's code to develop new or different software; and stop using Reliq's code for any purpose.

Defendants' unlawful conduct is clearly actionable and Plaintiff's Application for Preliminary Injunction should be granted.  Plaintiff hereby requests a hearing on its Application for Preliminary Injunction.  Plaintiff hereby requests a permanent injunction.  Plaintiff is willing to post a bond in an amount set by the Court.

## PRAYER

WHEREFORE, Plaintiff Reliq Health Technologies, Inc. asks for judgment against Defendants for the following:

a.      All actual damages caused by Defendants' illegal conduct, whether such damages are consequential, direct, incidental or otherwise;

b.      Punitive or exemplary damages as a result of intentional, willful, malicious conduct by Defendants;

c.      Pre-judgment and post-judgment interest;

d.      Reasonable and necessary attorneys' fees incurred in the prosecution and appeal of this case together with all costs of suit;

e.      Judicial declaration that the Agreement is void, or alternatively order rescission of the Agreement;

f.      Judicial declaration that the Agreement has been terminated;

g.      Grant Plaintiff's Application for Preliminary Injunction and order as follows:

1.  Defendants immediately cease using Reliq's brand name "iUGO" or "iUGO Care" and/or other Reliq trademarks on any website, promotional material, or any medium in which information is conveyed; and

2.  Defendants immediately cease marketing, promoting, selling or using in any way software that bears the "iUGO" name or any other name or mark owned by Reliq; and

3.  Defendants immediately cease using in any way any software code that is based, in whole or in part, on software owned by Reliq; Defendants must stop marketing, selling or using any software that is based, even in part, on Reliq's code; stop using Reliq's code to develop new or different software; and stop using Reliq's code for any purpose.

h.      Any other relief at law or equity to which Plaintiff is justly entitled to receive.

Respectfully submitted,

*/s/ Paul D. Clote*
PAUL D. CLOTE
Federal Bar No. 7437
Texas Bar No. 04407300
MARCUS V. EASON
Federal Bar No. 2609087
Texas Bar No. 24092374
McGINNIS LOCHRIDGE LLP
711 Louisiana, Suite 1600
Houston, Texas 77002
pclote@mcginnislaw.com
meason@mcginnislaw.com

MITCHELL C. CHANEY
Federal Bar No.
State Bar No. 04107500
McGINNIS LOCHRIDGE LLP
600 Congress Ave, Suite 2100
Austin, Texas 78701
(512) 495-6000
(512) 495-6093 Fax
mchaney@mcginnislaw.com

ATTORNEYS FOR PLAINTIFF
RELIQ HEALTH TECHNOLOGIES, INC.