## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RELIQ HEALTH TECHNOLOGIES, INC. | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-00040 |
| | § | |
| SHELBY NEAL AND ACCUHEALTH | § | |
| TECHNOLOGIES, LLC, | § | |
| | § | |
| Defendants. | § | |

### ORIGINAL ANSWER AND COUNTERCLAIMS OF ACCUHEALTH TECHNOLOGIES, LLC, STEPHEN SAMSON, AND BOBY DEVEROS

TO THE HONORABLE COURT:

COMES NOW Defendants and Counter-Plaintiffs Accuhealth Technologies, LLC, Stephen Samson, and Boby Deveros (hereinafter collectively referred to at times as "CounterPlaintiffs") and file this their Original Answer and Counterclaims to the First Amended Complaint of Plaintiff and Counter-Defendant Reliq Health Technologies, Inc. (hereinafter "CounterDefendant" or "Reliq"), and in support thereof would respectfully show as follows:

### ANSWER

### As to Plaintiff's Statement of Parties

1.      Defendants admit the allegations in paragraph 1 of the First Amended Complaint ("FAC").

2.      Defendants lack personal knowledge or information to admit or deny paragraph 2 of the FAC.

3.      Defendants admit the factual allegations in paragraph 3 of the FAC, but note that they have appeared and filed a Motion to Dismiss Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code.

4.    Defendants admit the allegations in paragraph 4 of the FAC.

5.    Defendants admit the allegations in paragraph 5 of the FAC.

**As to Plaintiff's Statement of Jurisdiction and Venue**

6.    Paragraph 6 of the FAC does not contain any factual allegations the Defendants are required to admit or deny.

7.    Paragraph 7 of the FAC does not contain any factual allegations the Defendants are required to admit or deny.

8.    Defendants lack personal knowledge or information to admit or deny the factual allegation in paragraph 8 of the FAC.

9.    Defendants admit the factual allegations in paragraph 9 of the FAC.

10.   Defendants deny the factual allegation that Samson committed any torts in the State of Texas. As to the remaining allegations in paragraph 10 of the FAC, the Defendants are not required to admit or deny them because they are legal conclusions and are not facts.

11.   Defendants deny the factual allegation that Deveros committed any torts in the State of Texas. As to the remaining allegations in paragraph 11 of the FAC, the Defendants are not required to admit or deny them because they are legal conclusions and not facts.

12.   Defendants deny the allegations in paragraph 12 of the FAC and allege that appropriate venue is the Southern District of Texas, McAllen Division.

**As to Plaintiff's Factual Background**

13.   Defendants admit the allegations in paragraph 13 of the FAC.

14.   Defendants deny Neal was a Reliq employee. The Defendants admit the remaining factual allegations in paragraph 14 of the FAC.

15.     Defendants lack personal knowledge or information to admit or deny paragraph 15 of the FAC.

16.     Defendants deny that Deveros "had responsibility over Reliq's iUGO Care platform." Defendants admit the remaining allegations in paragraph 16 of the FAC.

17.     Defendants deny that Accuhealth was not given the right to use the Reliq or iUGO names. Defendants deny that they misappropriated any software code, to the extent such a claim can be implied from the facts alleged in paragraph 17.   Defendants admit the remaining allegations in paragraph 17.

18.     Defendants admit that Samson represented to Reliq that Accuhealth would increase Reliq's business in the Texas market, which would help Reliq's business.  Defendants deny that Samson represented he could promote Reliq's business in the Texas market through Accuhealth. Defendants admit the remaining allegations in paragraph 18.

19.     Defendants admit a Supplemental Agreement was signed. Defendants cannot admit or deny the purpose for which Reliq signed the Supplemental Agreement.

20.     Defendants deny the allegations in paragraph 20 of the FAC.

21.     Defendants deny the allegations in paragraph 21 of the FAC.

22.     Defendants admit that Defendant Stephen Samson represented that Accuhealth would attempt to enroll patients that would benefit Reliq and that Accuhealth patients using Reliq's software would benefit both companies. Defendants deny that Samson ever solicited or attempted to divert business from Reliq's accounts with Paz Home Health, Criterion, and Rio Grande Valley Health Alliance ACO. Defendants deny the remainder of the factual allegations in paragraph 22.

23.     Defendants admit that Defendants Stephen Samson, Boby Deveros, and Shelby Neal resigned from Reliq on December 4, 2018. Defendants deny the remainder of the allegations in paragraph 23 of the FAC.

24.     Defendants deny the factual allegations in paragraph 24 of the FAC.

25.     Defendants deny the allegations in paragraph 25.

26.     Defendants lack personal knowledge or information to admit or deny the factual allegations in paragraph 26 of the FAC.

27.     Defendants deny they misappropriated Reliq's marks or brand names. Defendants lack personal knowledge to either admit or deny the remaining factual allegations in paragraph 27 of the FAC.

28.     Defendants admit the software they use is better than Reliq's, but they do not sublicense or sell that software to others. Defendants deny the remaining allegations in paragraph 28 of the FAC.

29.     Defendants deny the allegations in paragraph 29 of the FAC.

30.     Defendants admit that Defendant Samson had business development discussions and meetings with MD Anderson Cancer Center in Houston while working for Reliq. Defendants deny they committed any illegal acts and deny they sought to divert business from Reliq to Accuhealth.  The Defendants lack personal knowledge to either admit or deny the remainder of the factual allegations in paragraph 30 of the FAC.

31.     Defendants deny that Defendant Boby Deveros engaged in the theft of medical devices or any other fraudulent activities. Defendants admit Deveros worked as a contractor for Reliq and worked with the iUGO software platform. Defendants deny the remainder of the factual allegations in paragraph 31 of the FAC.

32.     Defendants admit that Reliq previously stored all of its ForaCare medical devices at Nexlink. Defendants deny the remainder of the allegations in paragraph 32 of the FAC.

33.     Defendants deny that the ForaCare devices transmit data directly to iUGO Versions 1.0 and 2.0.  admit the allegations in paragraph 33 of the FAC. Defendants lack personal knowledge or information to admit or deny the remaining factual allegations in paragraph 33 of the FAC.

34.     Defendants deny the allegations in paragraph 34 of the FAC.

35.     Defendants deny the allegations in paragraph 35 of the FAC.

36.     Defendants admit Reliq asked Samson to return his laptop computer. The Defendants deny the remaining factual allegations in paragraph 36 of the FAC.

37.     Defendants deny the allegations in paragraph 37 of the FAC.

38.     Defendants lack personal knowledge or information to admit or deny whether an investigation into Defendant Stephen Samson's activities exists. The remaining allegations in paragraph 38 of the FAC are not factual and, as such, do not require a response.

39.     Defendants deny that all of the property described in paragraph 39 is in their custody or control. Reliq closed its office in McAllen, Texas, and the property that was not discarded was stored at Accuhealth, at Reliq's request. The Defendants deny that they failed to return the described property or that it constitutes conversion and allege that they did not receive any request to return such property until after this lawsuit was filed. The Defendants admit that they have offered to Reliq that it can arrange to pick up its property at any time during reasonable business hours, but deny they have an obligation to ship the property to Reliq.

40.     Defendants deny the factual allegations in paragraph 40 of the FAC.

41.     Defendants deny the factual allegations in paragraph 41 of the FAC.

### As to Plaintiff's Cause of Action for Trademark Infringement and/or False Advertising and/or False Association

42.     The allegations in paragraph 42 of the FAC are not factual and, as such, do not require a response.

43.     Defendants deny the factual allegations in paragraph 43 of the FAC.

44.     The legal contentions in paragraph 44 of the FAC are not factual and, as such, do not require a response.

45.     The legal contentions in paragraph 45 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 45 of the FAC.

### As to Plaintiff's Cause of Action for Unfair Trade Practices and Unfair Competition

46.     The allegations in paragraph 46 of the FAC are not factual and, as such, do not require a response.

47.     Defendants deny the factual allegations in paragraph 47 of the FAC.

48.     Defendants deny the factual allegations in paragraph 48 of the FAC.

### As to Plaintiff's Cause of Action for Copyright Infringement

49.     The allegations in paragraph 49 of the FAC are not factual and, as such, do not require a response.

50.     The legal contentions in paragraph 50 of the FAC are not factual and, as such, do not require a response.

51.     Defendants deny the factual allegations in paragraph 51 of the FAC.

52.     Defendants deny the factual allegations in paragraph 52 of the FAC.

### As to Plaintiff's Cause of Action for Shelby Neal's Breaches of Contract

53.      Defendants lack personal knowledge or information to admit or deny paragraph

53 of the FAC.

54.     Defendants lack personal knowledge or information to admit or deny paragraph 54 of the FAC.

55.     Defendants lack personal knowledge or information to admit or deny paragraph 55 of the FAC.

**As to Plaintiff's Cause of Action for Shelby Neal's Breaches of Fiduciary Duty**

56.     The allegations in paragraph 56 of the FAC are not factual and, as such, do not require a response.

57.     Defendants deny the factual allegation in paragraph 57 of the FAC.

**As to Plaintiff's Cause of Action for Accuhealth's Breaches of Contract**

58.     The allegations in paragraph 58 of the FAC are not factual and, as such, do not require a response.

59.     Defendants admit the parties executed an agreement and admit the agreement contains the language quoted in paragraph 59 of the FAC.

60.     Defendants deny the factual allegations in paragraph 60 of the FAC.

61.     Defendants deny the factual allegations in paragraph 61 of the FAC.

**As to Plaintiff's Cause of Action for Theft of Reliq Property**

62.     The allegations in paragraph 62 of the FAC are not factual and as such, do not require a response.

63.     Defendants deny the factual allegations in paragraph 63 of the FAC.

64.     The legal contentions in paragraph 64 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 64 of the FAC.

**As to Plaintiff's Cause of Action for Violations of the Stored Communications Act**

65.     The allegations in paragraph 65 of the FAC are not factual and, as such, do not require a response.

66.     Defendants deny the factual allegations in paragraph 66 of the FAC.

67.     Defendants deny the allegations in paragraph 67 that Defendant Stephen Samson's conduct is actionable under the Stored Communications Act. The remaining allegations in paragraph 67 of the FAC are not factual and as such, do not require a response.

**As to Plaintiff's Cause of Action for Violations of the Computer Fraud and Abuse Act**

68.     The allegations in paragraph 68 of the FAC are not factual and as such, do not require a response.

69.     Defendants deny the factual allegations in paragraph 69 of the FAC.

70.     Defendants deny the factual allegations in paragraph 70 of the FAC.

71.     The allegations in paragraph 71 of the FAC are not factual and as such, do not require a response.

**As to Plaintiff's Cause of Action for Violations of the Texas Harmful Access by Computer Act**

72.     The allegations in paragraph 72 of the FAC are not factual and as such, do not require a response.

73.     The legal contentions in paragraph 73 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 73 of the FAC.

74.     The allegations in paragraph 74 of the FAC are not factual and as such, do not require a response.

## As to Plaintiff's Cause of Action for Conversion

75.     The allegations in paragraph 75 of the FAC are not factual and as such, do not require a response.

76.     Defendants deny the factual allegations in paragraph 76 of the FAC.

77.     Defendants deny the factual allegations in paragraph 77 of the FAC.

78.     Defendants deny the factual allegations in paragraph 78 of the FAC.

## As to Plaintiff's Cause of Action for Conspiracy

79.     The allegations in paragraph 79 of the FAC are not factual and as such, do not require a response.

80.     Defendants deny the factual allegations in paragraph 80 of the FAC.

81.     Defendants deny the allegations in paragraph 81 of the FAC.

## As to Plaintiff's Cause of Action for Declaratory Judgment

82.     The allegations in paragraph 82 of the FAC are not factual and as such, do not require a response.

83.     Defendants admit that a disagreement exists between Plaintiff and Defendants as to the rights and obligations under their agreements. Defendants deny the remainder of the factual allegations in paragraph 83 of the FAC.

84.     Defendants deny the factual allegations in paragraph 84 of the FAC.

## As to Plaintiff's Damages

85.     Defendants deny the allegations in paragraph 85 of the FAC and deny that Plaintiff is entitled to any damages.

86.     Defendants deny the allegations in paragraph 86 of the FAC and deny that Plaintiff is entitled to any damages.

## As to Plaintiff's Attorneys' Fees

87.     Defendants deny Reliq is entitled to attorney's fees.

## As to Plaintiff's Conditions Precedent

88.     Defendants deny that Reliq complied with conditions of the agreement such that it can enforce any provisions against Accuhealth.  Specifically, Reliq committed the first material breach of the agreement.

## As to Plaintiff's Application for Preliminary Injunction

89.     The legal contentions in paragraph 89 of the FAC are not factual and as such, do not require a response.

90.     The legal contentions in paragraph 90 of the FAC are not factual and as such, do not require a response.

91.     The legal contentions in paragraph 91 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 91 of the FAC.

92.     The legal contentions in paragraph 92 of the FAC are not factual and as such, do not require a response.

93.     The legal contentions in paragraph 93 of the FAC are not factual and as such, do not require a response.

94.     The legal contentions in paragraph 94 of the FAC are not factual and as such, do not require a response.

95.     The legal contentions in paragraph 95 of the FAC are not factual and as such, do not require a response.

96.     Defendants deny the factual allegations in paragraph 96 of the FAC.

97.     The legal contentions in paragraph 97 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 97 of the FAC.

98.     The legal contentions in paragraph 98 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 98 of the FAC.

99.     The legal contentions in paragraph 99 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 99 of the FAC.

100.    The legal contentions in paragraph 100 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 100 of the FAC.

101.    The legal contentions in paragraph 101 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 101 of the FAC.

102.    The legal contentions in paragraph 102 of the FAC are not factual and as such, do not require a response. As to any non-legal contentions remaining, Defendants deny the factual allegations in paragraph 102 of the FAC.

## As to Plaintiff's Prayer

103.    To the extent that Plaintiff's prayer, an unnumbered paragraph, constitutes assertions of fact that require a response, Defendants deny any such allegations.

## AFFIRMATIVE DEFENSES

104.    Each defense and affirmative defense is stated in the alternative and exists

separately from all other defenses or affirmative defenses.

## First Defense

105.     In further answering the FAC, Defendants allege that Plaintiff fails to state a claim upon which relief may be granted.

## Second Defense

106.     Plaintiff's claims are barred by the doctrine of unclean hands and other equitable defenses as Plaintiff has engaged in wrongful acts which should bar its recovery in this action.

## Third Defense

107.     Defendants performed or stood ready, willing, and able to perform all contractual obligations owed to Plaintiff.

## Fourth Defense

108.     Plaintiff's claims are barred by the doctrines of consent, waiver, estoppel, or acquiescence.

## Fifth Defense

109.     Defendants actions were proper under their Employment Agreements with Reliq and under Reliq's Release and Waiver of Non-Compete Agreements.

## Sixth Defense

110.     Defendants actions were proper under the Software License Agreement between Accuhealth and Reliq.

## Seventh Defense

111.     Defendants invoke the provisions of Chapter 32 and Chapter 33 of the Texas Civil Practice and Remedies Code with respect to the determination of comparative responsibility

between the Plaintiff and any Defendant, Third-Party Defendant, settling person and Responsible Third Party.

## Eighth Defense

112.    Defendants assert the affirmative defense that the Plaintiff has failed to mitigate its damages.

## Ninth Defense

113.    Defendants assert the affirmative defense that the Plaintiff's claims are barred by the express limitations set forth in the contract between Reliq and Accuhealth.

## Tenth Defense

114.    Accuhealth asserts the affirmative defense that the Plaintiff's claims are barred by the "First Material Breach Rule" and would show that the Plaintiff materially breached the terms of the Agreement by failing to comply with the terms and provisions of the Agreement and Accuhealth is relieved from performing any further obligations under the Agreement.

## Eleventh Defense

115.    As to claims seeking to recover punitive, exemplary or any consequential damages, Defendants plead the affirmative defense of waiver in that the Plaintiff, by the terms of the Agreement, expressly waived such claims.

## Twelth Defense

116.    Defendants deny that they owed any fiduciary duty to the Plaintiff, or that they agreed to act as a fiduciary on behalf of the Plaintiff.

## COUNTERCLAIMS OF ACCUHEALTH TECHNOLOGIES, LLC, STEVEN SAMSON, AND BOBY DEVEROS

As to its counterclaims against Reliq, CounterPlaintiffs allege as follows:

### Parties

1.      CounterPlaintiffs Accuhealth Technologies, LLC, Stephen Sampson, and Boby Deveros have appeared in this case.

2.      CounterDefendant Reliq is a Canadian legal entity with its principal place of business in Ontario, Canada; it already has appeared in this case and is before the Court for all purposes.

### Jurisdiction and Venue

3.      This Court has supplemental subject matter jurisdiction over the following Counterclaims under 28 U.S.C § 1367(a) because these Counterclaims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      This Court has personal jurisdiction over CounterDefendant, as Reliq voluntarily filed sued in this Court.

5.      CounterPlaintiffs allege that venue is proper in the Southern District of Texas, McAllen Division because all or a substantial part of the events giving rise to this action occurred in or near McAllen, Texas.

### Actions Giving Rise to This Complaint

6.      CounterPlaintiffs' initial pleading in this lawsuit was a Motion to Dismiss Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code. After its filing, however, Reliq continued its pattern of issuing untrue press releases. The recent press releases, as well as

other statements, have defamed CounterPlaintiffs' reputations, and have damaged CounterPlaintiffs ability to conduct business, thus causing damages to CounterPlaintiffs. The false statements made by Reliq have made the current situation untenable, such that the Court merely granting these Defendants' previously filed Motion to Dismiss Reliq's lawsuit will not provide the CounterPlaintiffs with complete relief. Thus, CounterPlaintiffs have been forced to file counterclaims to protect their reputations and to recover damages.

<u>Summary of Facts Supporting Counterclaims</u>

7.      Reliq has, since its inception, issued press releases and financial statements riddled with misrepresentations intended to deceive the public. Reliq knew or should have known that its continuous and grossly false statements made Reliq appear as though it were actually a viable company – one that would encourage economic support from the investing community and that would attract talented labor for hire. Its most recent press release and financial statement include defamatory statements about the Defendants, which were intended to and have damaged the CounterPlaintiffs.

8.      Stephen Samson ("Samson") and Boby Deveros ("Deveros") fell victim to Reliq's fraudulent conduct by being lured to Reliq, separately, based on false information provided by Reliq's management team about the nature of Reliq's business, the viability of its software, and its financial performance.

9.      With extensive background as a cyber security consultant, Samson was recruited to be Reliq's Chief Information Officer (CIO) in January 2018. He managed Reliq's development team, sales team, and implementations team, the latter of which later included Deveros, who was retained as an independent contractor in May 2018 to fulfil the role of Director of Implementations. Samson is not and never has been a software "coder."

10.     Samson and Deveros were recruited by Giancarlo De Lio ("De Lio"), who was Reliq's Chief Visionary Officer, and they accepted reduced salaries based on the commissions they expected to earn based on the representations made by Reliq. Their expectations were based on a reasonable reliance on statements made by Reliq, through its management, regarding the viability of Reliq's software, its patient count, revenue, and profitability.

11.     What Samson and Deveros did not know when they were hired and what Reliq hid from them, is that Reliq had for some time been falsely reporting its financial results and other material information about the company to its investors and the public.   The false information was used to pump the value of Reliq's stock, to attract additional venture capital, and to attract talented labor like Samson and Deveros.

12.     An example of the type of representations made to Samson and Deveros and the investing public is as follows:

> VANCOUVER, BC, January 11, 2018 / - Reliq Health Technologies Inc. (TSXV:RHT or OTCQB:RQHTF) ("**Reliq**" or the "**Company**"), a technology company focused on developing innovative mobile health (mHealth) solutions for Community-Based Healthcare, is pleased to announce that it closed 2017 with over 6,000 paid subscribers using its iUGO Care chronic care management, remote patient monitoring and telemedicine platform, representing recurring monthly revenue of over US$300,000/month. As a result, December 2017 was the Company's first month of profitability.

This statement by Reliq was a lie.

12.1     Reliq did not have 6,000 paid subscribers in 2017.

12.2     Reliq did not have recurring monthly revenue of over $300,000/month as of December 2017.

12.3     The lie was consistent with what Samson and Deveros were told by Reliq's management when they were hired—that Reliq had thousands of paying patients generating

significant recurring monthly revenue. As Samson and Deveros later discovered, Reliq did not have 6,000 paid subscribers in 2017. Reliq also has never received even $30,000 in monthly recurring revenue, much less $300,000.00.

Reliq announced in February 2018 as follows:

> ## NEWS RELEASE
>
> ### Reliq Health Technologies Named #1 2018 TSX Venture 50[TM] Performer, and Reaches 10,000 Patients Live on Its iUGO Care Platform
>
> **VANCOUVER, BC, February 23, 2018 / - Reliq Health Technologies Inc. (TSXV:RHT or OTCQB:RQHTF) ("Reliq" or the "Company"), a technology company focused on developing innovative mobile health**

Again, this was a lie, though Samson did not know at the time it was a lie. Reliq needed to keep up with the expectations it had set in the market and with Samson and other employees and contractors, which was that it would add lots of patients to its platform every month. So, since it had announced 6,000 paid subscribers as of end of December 2017, it had to announce thousands more as of end of February 2018.

13.     Reliq literally doubled down on its 6,000 subscribers lie in March 2018 when it announced as follows:



Reliq gratuitously and falsely added in the same press release that it was "continuing to add at least 2,000 patients per month to the platform."

13.1    Reliq did not at that time have 2,000 patients on its platform.

13.2    Reliq at that time did not have the capability to add 2,000 patients per month. Yet, it did not disclose the truth to Samson at that time.

14.    The lies were not limited to Reliq's patient count, but extended to falsely representing the *potential pipeline* of patients. For example, in a press release announcing its new relationship with Paz Home Health, LLC ("Paz"), Reliq represented that it had "begun enrolling the first of Paz's >10,000 patients."

14.1    Reliq had no reasonable basis to believe in March 2018 that Paz had 10,000 patients to enroll.

14.2    In fact, at Paz's very peak, it had approximately 211 patients subscribed to telemonitoring. Paz could onboard only a mere ten patients per month.

14.3    Moreover, Paz did not itself have 1000 total patients, much less 10,000 that needed telemonitoring services.

14.4    At the time Samson and Deveros were hired, Reliq knew or should have known that the information Reliq was releasing regarding Paz was not true, yet they failed to disclose the truth about Paz to Samson and Deveros.

15.    These are facts CEO Crossley and others at Reliq knew or should have known at the time Reliq made its fraudulent representations.

16.    Reliq stated to Samson, Deveros and others that it had thousands of paying patient subscribers at a time when it knew or should have known that, in fact, it had very few paying patient subscribers.

17.    Samson did not discover until April 13, 2018 what he believed to be material misrepresentations made by Reliq regarding the number of patient subscribers it had at that time, and at the time he was hired. He went straight to management with his concerns. Subscribers are the lifeblood of companies that charge recurring monthly fees. They also are important to Samson and Deveros, since their compensation was supposed to include commissions from these recurring monthly fees as a significant component. Obviously, more subscribers meant more recurring monthly revenue, and more commissions to Samson and Deveros.

18.    CEO Crossley blamed then Chief Visionary Officer Giancarlo De Lio for any misstatement regarding patient numbers. The sheer size of the fraudulently reported patient numbers was so large that Crossley stated she would "go to prison" because of the fraud.

19.    De Lio, after discussing the issue with Crossley, placated Samson by assuring him that the patients were "there," they just were not reflected within the Reliq system, yet. De Lio explained that the vast majority of the patients were from Paz, a home health care agency based

in McAllen, and that Paz simply had trouble onboarding its patients onto the Reliq system. Reliq had the opportunity to disclose the truth about its patient count at that time, yet chose not to disclose the truth to Samson. De Lio was so convincing that not only did Samson stay with Reliq, but he recruited Defendants Deveros and Neal to work for Reliq based on the information provided to him by De Lio and Crossley.

20.     Reliq was able to keep up its fraud by "managing" the President of Paz and controlling the information she disclosed to others.[1] This scheme was hidden from Samson and he did not know it was occurring until he received a text message about it from De Lio on or about May 25, 2018.

21.     From March through September 2018, Samson and Deveros did everything they could to position Reliq to be profitable, as did Neal once she became a contract worker in June 2018, and to achieve the actual number of subscribing patients that Reliq had represented.

22.     Samson, at his own expense, purchased a home health agency in Texas in order to help onboard new patients. This business became Accuhealth Technologies, Inc and was started with the full knowledge and support of Reliq. Accuhealth became a Reliq customer and entered into a software license agreement with Reliq.

23.     The Software Agreement between Accuhealth and Reliq required Reliq to supply resource support and software at a certain price, plus hardware devices at no charge and also granted Accuhealth a license to use Reliq's software platform, called iUGO.

24.     That Reliq's software (branded "iUGO") was terrible or useless for its intended purpose was known by developers within the company (despite Reliq's public statements to the contrary).

---

[1] Samson received a text on May 25, 2018 regarding Paz. The message proves (a) that Crossley knew the reported numbers were a lie; (b) that the critical number to report was actual billable patients; and (c) that reporting the lie would mean criminal proceedings against her. Samson did not know any of this was occurring at the time.

24.1    In fact, the change from iUGO Version 1.0 to iUGO Version 2.0 (which occurred in August 2018) required almost an entire re-write of the software.

24.2    Reliq also knew or should have known when it recruited Samson and Deveros that its software did not support the patient and revenue numbers that Reliq was touting to Samson, Deveros, and the investing public.

24.3    The primary reason the software did not support such numbers was because it really did not work for its intended purpose.  Unfortunately for Samson and Deveros, Reliq hid this information from them when they were recruited and hired, and they did not understand that Reliq's internally developed iUGO software was useless for its intended purpose until Accuhealth became a Reliq customer and tried to use the software on a daily basis.

25.    Even though CEO Crossley knew that Reliq had grossly misstated its patient count and financial information, she wanted to hide that information from Reliq's Board Chairman.

26.    CEO Crossley asked Samson not disclose the information to the Chairman.

27.    CEO Crossley stated that she knew "there would literally be criminal proceedings" if Reliq admitted that the 12,000 patient number was actually less than 100.

28.    CEO Crossley also stated that she and others "literally would go to prison for fraud" if Reliq had to restate its 12,000 patient number that had been publicly reported.

29.    Yet, to this day Reliq still has not restated its actual patient numbers or been truthful about the reasons its numbers must be restated.[2]

30.    Since the resignations, and after filing this lawsuit, Reliq has issued defamatory press releases to the public through which Reliq has falsely accused the Defendants of being

---

[2] See October 2018 press release wherein Reliq falsely claims that the reason it needs to restate its financials is because of "client issues with securing reimbursement from the payor." The truth is that it only had a few hundred subscribers and not the 12,000 it previously represented to the public.

responsible for the events that culminated in the restatement of Reliq's financials.

31.     It also included a note in its restated financials casting blame on the Defendants as the cause of the restated financials. In addition to issuing defamatory statements after Defendants' resignations, Reliq also breached its Software Agreement with Accuhealth by denying Accuhealth access to certain medical devices which are critical to Accuhealth's business.

## First Cause of Action: Breach of Contract

32.     The essential elements required to prove a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Electrostim Med. Services, Inc. v. Health Care Serv. Corp.*, 614 Fed. Appx. 731, 739 (5th Cir. 2015), citing *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex.App.—Fort Worth 2008, pet. dism'd).

33.     Here, that Accuhealth and Reliq had a contract is not in dispute. The Software License Agreement (the "Software Agreement") expressly provides that the law governing the Software Agreement shall be that of the State of Texas.

34.     Accuhealth tendered its performance as required. Reliq, however, failed to perform as agreed under the Software Agreement. Among various other services to be performed by it under the Software Agreement, Reliq was to provide resource support to its client, Accuhealth. It further agreed to supply hardware devices without charge, which it failed to supply timely. Reliq's service standards were virtually nonexistent, and support requests often went ignored and unanswered. Upon growing tensions between Reliq and Accuhealth,

Accuhealth suspected it was being ignored on purpose and tested its theories by sending e-mails to support@reliqhealth. No one in support responded.

35.     Reliq also breached numerous representations, warranties, and covenants contained in the Software Agreement. First, it represented and warranted that it was "capable of providing the services and the services will be provided in a workmanlike, professional, prompt and diligent manner, conforming to industry standards, by individuals with suitable training, education, experience, and skill to provide the Services." Reliq failed to perform in a workmanlike, professional, prompt and diligent manner.

36.     Furthermore, the iUGO Version 1.0 and 2.0 software products that Reliq provided to Accuhealth were not suitable for their intended purpose, and Reliq knew it or should have known it. This is a direct breach of Reliq's warranties under the Software Agreement.

37.     Reliq also breached the Software Agreement by failing to supply timely certain essential medical devices. Under the Software Agreement, Reliq was obligated to provide Accuhealth with all the hardware Accuhealth required in its implementation of patients and agreed such hardware would be provided free of charge:

**Additional Services**

Implementation of patients, will be performed by Reliq staff and will include all the hardware required, Reliq will provide hardware to the Client free of charge.

I accept"_____ Initials

Accuhealth required specific ForaCare medical devices in order to onboard its new patients, and as Reliq was very well aware, no other medical devices were available to supply to Accuhealth at that time. Reliq knowingly and purposefully delayed supplying Accuhealth the medical devices

it was obligated to supply to Accuhealth without charge, which essentially paralyzed Accuhealth's capacity to onboard new patients until it received the ForaCare devices.

38.     Reliq materially breached the Software Agreement, and its conduct caused damages to Accuhealth. In the alternative, Reliq's conduct constitutes repudiation, justifying rescission of the Software Agreement.

## Second Cause of Action: Defamation

39.     To maintain a claim for defamation under Texas law, a plaintiff must plead facts showing: (1) that the defendant published a statement, (2) which was defamatory concerning the plaintiff, (3) while acting with malice, if the plaintiff was a public figure, or while acting with negligence, if the plaintiff was a private individual, regarding the truth of the statement. *Copeland v. State Farm Ins. Co*., 657 Fed. Appx. 237, 240 (5th Cir. 2016). A statement is defamatory when its "words tend to damage a person's reputation, exposing him or her to public hatred, contempt, ridicule, or financial injury." *Udoewa v. Plus4 Credit Union*, 754 F. Supp. 2d 850, 866 (S.D. Tex. 2010), aff'd, 457 Fed. Appx. 391 (5th Cir. 2012).

40.     Here, Reliq has published multiple defamatory statements that are damaging to Defendants' reputations and which expose them to public hatred, contempt, ridicule, or financial injury.  In its press releases issued on February 26, 2019, Reliq stated that Stephen Samson, Boby Deveros, and others committed acts that resulted in the restatement of Reliq's financial statements on October 16, 2018.  The statement essentially was repeated within Reliq's year end financials dated December 31, 2018.  Those statements are not true. Reliq was engaged in defrauding the public long before Samson was employed by Reliq or Deveros was a contractor, and it was Reliq's conduct in falsely stating the number of paying patients and the revenue generated by those patients (about which Samson and Deveros tried unsuccessfully to have Reliq

come clean to the public) that required Reliq to restate its financials. On information and belief, Reliq employees or contractors have contacted clients or prospective clients of Accuhealth and communicated to them some variation of the false statements set forth above. Samson, Deveros and Accuhealth have been damaged by Reliq's conduct.

### Third Cause of Action: Fraud

41.     The elements required to prove a fraud claim include: (1) the defendant made a representation; (2) the representation was material; (3) the representation was false; (4) the defendant knew the representation was false or made the representation recklessly, without knowledge whether it was true; (5) the representation was made with the intent that the plaintiff(s) act on it; (6) the plaintiff(s) relied on the representation; and (7) the plaintiff(s) were damaged by the representation. Fraud also can be proved when a defendant conceals material facts, which the defendant had a duty to disclose; the facts are material; the plaintiff(s) do not have an equal opportunity to discover the facts; and the plaintiff is damaged by relying on the defendant's failure to disclose the truth.

42.     Reliq, through company officers, made fraudulent statements to Samson and Deveros in order to induce them to leave their prior employment and to work on Reliq's behalf (Samson as an employee and Deveros as a contractor).  Reliq knew the statements were false when made or made the statements without knowledge as to their truth.

43.     The statements made to Samson and Deveros to induce them to leave their prior jobs included: (i) that Reliq had thousands of paid subscribers in 2017; (ii) that Reliq's iUGO software was successful and was the reason Reliq was onboarding so many paying patients and would be able to onboard thousands more; (iii) and that they would earn large sums based on commissions promised to them by Reliq.

44.     Reliq knew it did not have thousands of paying patients at the time it hired Samson as an employee in January 2018.

45.     Reliq knew when it hired Samson as an employee in January 2018 that it did not have recurring monthly revenue of $300,000.00 or anything close to $300,000.00.

46.     Reliq was without sufficient information or basis to support its representations to Samson that its iUGO software was successful in the market when it made those representations to him prior to hiring him as an employee in January 2018.

47.     Samson and Deveros reasonably relied on Reliq's representations, and they have been damaged by their reasonable reliance on such representations.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Defendants Accuhealth Technologies, LLC, Stephen Samson, and Boby Deveros pray that Plaintiff takes nothing on its claims against them, and that the Court grant Defendants Accuhealth Technologies, LLC, Stephen Samson, and Boby Deveros any and all relief to which they may show themselves justly entitled.

Respectfully submitted,

ATLAS, HALL & RODRIGUEZ, L.L.P.
818 W. Pecan Blvd. (78501)
P.O. Drawer 3725
McAllen, Texas 78502
Telephone: (956) 682-5501
Telecopier: (956) 686-6109

By:*/s/Daniel G. Gurwitz*
    Eduardo R. Rodriguez
    State Bar No. 00000080
    Fed ID #1944
    Daniel G. Gurwitz
    State Bar No. 00787608
    Fed. ID #16895
    Elizabeth "Betsy" Dyke
    State Bar No. 24103293
    Email: dgurwitz@atlashall.com
    Email: errodriguez@atlashall.com
    Email: edyke@atlashall.com

    **ATTORNEYS FOR DEFENDANTS**
    **ACCUHEALTH TECHNOLOGIES LLC,**
    **STEPHEN SAMSON AND BOBY DEVEROS**

**Certificate of Service**

The undersigned certifies that on March 28, 2019, a true and correct copy of the foregoing document shall be served on all counsel of record via this Court's ECF system.

    */s/ Daniel G. Gurwitz*
    Daniel G. Gurwitz